# SETTLEMENT AGREEMENT

It is hereby agreed by and between JOSUE BAEZ ("Baez"); and MASTER LEAF CORP., SMITH TALAL AMBAR, KHAMIS GHNAIN, and AHMA HAWILEH (collectively, "Defendants"), as follows:

Whereas, Baez was employed by Defendants in their warehouses located in Queens, New York, from 2019 to 2020;

Whereas, Baez subsequently filed a lawsuit in the United States District Court, Eastern District of New York, Case No. 21-CV-00359 (the "EDNY Lawsuit") alleging, inter alia, that Defendants violated various federal and New York State wage and hour laws; and

NOW, THEREFORE, for good and valuable consideration, the sufficiency of which is acknowledged hereby, and in consideration of the mutual covenants and undertakings set forth herein, the Defendants and Baez agree as follows:

1. **Payment of Settlement Amount:** In exchange for the mutual promises and covenants described herein, the Defendants shall pay Baez the gross sum of Eighteen Thousand Dollars and Zero Cents ($18,000.00) ("Settlement Amount"), to be distributed as follows:

   (i) Eleven Thousand Five Hundred and Three Dollars and Zero Cents ($11503.00) payable by check to Josue Baez, for which a Form 1099 will be issued, and sent to Josue Baez, 4 River Road #4E, Roosevelt Island, NY 10044 by overnight or priority mail;

   (ii) Six Thousand Four Hundred Ninety-Seven Dollars and Zero Cents ($6497.00) payable to Halpern Legal Clinic, for which a Form 1099 will be issued, and sent to Robert Halpern, 18 West Gowen Avenue, Philadelphia, PA 19119, by overnight or priority mail.

The Settlement Amount shall be paid according to the following schedule:

   (i) The first check as described above will be issued within ten (10) days following the Court's approval of this Settlement Agreement.

   (ii) The second check as described above will be issued within forty (40) days of the Court's approval of this Settlement Agreement.

Timely payment, as described in this paragraph, is a material condition of this agreement.

**2. Release and Waiver of Claims:** In consideration for the payment of the Settlement Amount, and other good and valuable consideration described herein, Baez and Baez's heirs, executers, representatives, administrators, agents and assigns (collectively the "Releasees") permanently, unconditionally and irrevocably fully and forever waives, releases and discharges the Defendants, and each and every one of the their respective parent corporations, subsidiaries, divisions, and affiliated entities, as well as each of the foregoing entities respective employees, agents, directors, members, shareholders, administrators, heirs, successors and assigns in their corporate and individual capacities (hereinafter referred to collectively as "Releasees") from all actions, causes of action, suits, claims, liabilities, rights, fees, damages, debts, obligations, expenses (inclusive of attorney fees) of any kind whatsoever, whether known or unknown and demands whatsoever, in law or equity, which against the Releasees, Releasors ever had, now have or hereafter can, shall or may, have, related to or concerning the payment of wages, benefits and/or compensation alleged to be owed by Defendants to Baez, and arising from his employment by defendant Master Leaf Corporation, through the date of this Agreement, whether arising out of or predicated upon any and all federal, New York State, or local wage and hour laws, statutes, constitutions, regulations, rules, ordinances or orders including, but not limited to, (i) those mandating payment of a minimum rate of pay or overtime, or requiring the provision of wage notices, and/or (ii) which were, or could have been, asserted in the EDNY Lawsuit. Baez shall file within seven (7) days of complete payment of the Settlement Amount a Stipulation of Dismissal with Prejudice. Releasor's obligations under this Agreement are expressly conditioned on the EDNY's order dismissing this Action with prejudice.

**3. No Pending Claims:**

(a) Baez shall not institute any action, which exists or may accrue up to the date of this Agreement, against the Releasees with any federal, state or local court or any administrative agency regarding any matter either asserted in the EDNY Lawsuit or otherwise covered by Paragraph 2 above, *Release and Waiver of Claims* (the "Released Claims").

(b) Baez represents that, as material inducement to the Defendants to enter into this Agreement, he is not party to any pending claims, charges, complaints or actions, of any nature whatsoever, against the Releasees with any federal, state or local court or any administrative agency. Baez further represents and warrants that he has not transferred or assigned, or attempted to transfer or assign, to any person or any entity, any claim that he may have against the Releasees.

(c) In the event either Baez institutes, is a party to, or a member of a class that institutes, any claim or action against the Releasees regarding any of the Released Claims, Baez agrees that such claims shall be dismissed or class membership terminated immediately upon presentation of this Agreement.  Baez shall execute any papers necessary to achieve this end.  Baez further shall reimburse the Releasees for all legal fees, costs, and disbursements that are incurred in defending and obtaining the dismissal of such claims instituted with Baez 's consent.

(d) Notwithstanding the foregoing in this paragraph, nothing herein shall bar Baez from filing a complaint with an administrative agency where such claim cannot be waived. However, to the extent such complaint involves a Released Claim, Baez shall not recover any monies from such a claim unless Baez cannot waive such claim to said monies.

**4.** **Non-Disparagement:** No party to this Agreement hereto shall make or cause to be made any statements, observations or opinions, or communicate any information (whether oral or written) that defames the reputation of any other Party.

**5.** **No Other Monies Due:** Baez further acknowledges and agrees that he has been paid and/or has received all compensation, wages, overtime, tips, fees, bonuses, commissions, and/or benefits to which he is, was, or may have been entitled, and that he is not owed any compensation, wages, overtime, tips, fees, bonuses, commissions, and/or benefits, for work performed up to the date of this Agreement including, but not limited, any and all paid time off, vacation, sick days, moving expenses or any other wages, compensation, payments, or benefits due under to either under contract, statute, regulation, or common law.

6. Confidentiality.

(a) Confidentiality of **Agreement**. Employee represents, warrants, and confirms that Employee has not disclosed or discussed the terms or conditions of this Agreement with any person, organization, or entity other than Employee's spouse or domestic partner, immediate family, attorney, or tax advisor. Employee agrees to maintain confidentiality, except as required by law, regarding Employee's allegations in the Action, all matters concerning Employee's employment with Employer that were at issue in the Action, the negotiations and discussions leading to this **Agreement**, and the substance of this **Agreement**, including the amount paid under this **Agreement**, except that Employee may disclose this **Agreement** to Employee's spouse or domestic partner, attorney, and tax advisor. Upon receipt of an inquiry regarding the Action or this

**Agreement** from someone other than Employee's spouse or domestic partner, attorney, or tax advisor, the Parties shall state only that "the matter has been resolved."

(b) <u>Acknowledgment</u>. Employee further understands and acknowledges that during the course of Employee's employment by Employer, Employee has had access to and learned about confidential, secret, and proprietary documents, materials, and other information, in tangible and intangible form, of and relating to Employer and its businesses and existing and prospective customers, suppliers, investors, and other associated third parties ("**Confidential Information**"). Employee further understands and acknowledges that this Confidential Information and Employer's ability to reserve it for the exclusive knowledge and use of Employer is of great competitive importance and commercial value to Employer, and that improper use or disclosure of the Confidential Information by Employee might cause Employer to incur financial costs, loss of business advantage, liability under confidentiality **agreements** with third parties, civil damages, and criminal penalties.

(c) <u>Definitions</u>. For purposes of this **Agreement**, Confidential Information includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic, or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, operations, services, strategies, techniques, **agreements**, contracts, terms of **agreements**, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, supplier information, vendor information, financial information, results, legal information, marketing information, advertising information, pricing information, credit information, design information, payroll information, staffing information, personnel information, supplier lists, vendor lists, security procedures, sales information, revenue, costs, formulae, notes, communications, product plans, designs, styles, models, ideas, experimental processes, experimental results, specifications, customer information, customer lists, manufacturing information, factory lists, distributor lists, and buyer lists.

Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified or treated as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

Employee understands and agrees that Confidential Information developed by Employee in the course of Employee's employment by Employer is subject to the terms and conditions of this **Agreement** as if Employer furnished the same Confidential Information to Employee in the first instance. Confidential Information shall not include information that is generally available to and known by the public at the time of disclosure to Employee, provided that the disclosure is through no direct or indirect fault of Employee or person(s) acting on Employee's behalf.

(d)  <u>Disclosure and Use Restrictions</u>. Employee agrees and covenants:

(i)  to treat all Confidential Information as strictly confidential;

(ii) not to directly or indirectly disclose, publish, communicate, or make available Confidential Information, or allow it to be disclosed, published, communicated, or made available, in whole or part, to any entity or person whatsoever (including other employees of Employer) not having a need to know and authority to know and use the Confidential Information in connection with the business of Employer and, in any event, not to anyone outside of the direct employ of Employer except as required in the performance of any of Employee's remaining authorized employment duties to Employer; and

(iii) not to access or use any Confidential Information, and not to copy any documents, records, files, media, or other resources containing any Confidential Information, or remove any such documents, records, files, media, or other resources from the premises or control of Employer, except as required in the performance of any of Employee's remaining authorized employment duties to Employer.

(e)  <u>Permitted Disclosures</u>. Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation, or order.

**7.**     **<u>Severability:</u>** Should any provision of this Agreement be declared illegal or unenforceable by any court or agency of competent jurisdiction, and such provision cannot be interpreted or modified so as to be enforceable, such provision shall immediately become null and void, leaving the remaining provisions of these documents in full force and effect.

8. **Non-Admissions:** Nothing herein shall be deemed an admission by the Defendants that it has violated any federal, state or local law.

9. **Voluntary Agreement:** The parties agree that they are signing this Agreement of their own free will, without coercion or duress, and voluntarily assent to all the terms and conditions contained herein.

10. **Complete Agreement:** The parties agree that this Agreement represents the complete understanding between the parties and no other promises or agreements shall be binding unless in writing and signed by the parties. This is an all-inclusive Agreement and the parties agree that there are no other written, oral, and/or implied representations, promises, or agreements that exist between them.

11. **Modification:** The Agreement cannot be modified, amended, terminated, or otherwise changed unless it is done so pursuant to a written document signed by the Defendants and Baez.

12. **Counterparts:** This Agreement may be executed with electronic signatures and in counterparts, and delivered by facsimile or email, each of which shall be deemed an original and each of which shall together constitute one and the same agreement.

**MASTER LEAF CORP.**

_____           Dated: _____
By:

_____
Name

_____
Title


_____           Dated: _____
**SMITH TALAL AMBAR**


**KHAMIS GHNAIN**                              Dated: _____

| | |
|---|---|
| _____ <br> **AHMA HAWILEH** | Dated: _____ |
| _____ <br> **JOSUE BAEZ** | Dated: _____ |